STATE *ex rel.* FIRST NATIONAL BANK OF JEFFERSON CITY, Relator, *vs.* THOMAS HOLLIDAY, STATE AUDITOR, Respondent.

1. *Legislature—Resolution voting extra pay to clerks for night work, of what force.—*A resolution of one of the houses of the legislature, granting extra pay to clerks for night work, is in violation of the statute relating to the compensation of the legislature, (Wagn. Stat., 903, § 4; 904, § 6) and not binding on the State officers.

1st. The law knows no fraction of days in such cases, and the additional pay, although the work was done at night, was an increase of *per diem* compensation forbidden by those provisions.

2d. The statute could not be modified, changed or done away with by the separate action of either branch of the General Assembly.

### *Petition for Mandamus.*

*E. L. Edwards & Son,* for Relator.

*Hockaday, Attorney General,* for Respondent, relied on Wagn. Stat., 903, § 4; Id., 904, § 6.

WAGNER, Judge, delivered the opinion of the court.

This is a petition for a peremptory writ of *mandamus* against the respondent to compel him to issue his warrants in favor of the plaintiff on account of certain certificates of indebtedness which it holds as assignee of the parties to whom they were issued. The relator states that on or about the 24th day of March, 1873, there was issued by the Speaker and chief clerk of the House of Representatives of the General Assembly of the state of Missouri, certificates respectively to Alex. Phipps, James Harding, John McMichael, L. W. McKinney and J.B. Waddill, for one hundred and twenty-two dollars and fifty cents each, as compensation for night services rendered by them as clerks of the House of Representatives of the 27th General Assembly ; that these certificates were assigned by the above named parties, in whose favor they were drawn, to the plaintiff, it paying full value for them, and that the state Auditor, the respondent, has refused and still refuses to audit the same and draw warrants for them.

In the return to the alternative writ, the respondent states that the persons to whom the certificates were issued, were clerks and officers of the House of Representatives of the 27th General Assembly, duly appointed as such, and that their salaries were fixed at five dollars per day, and that each of them had long since been fully paid for their services as such clerks and officers at the said salary of five dollars per day, and that the certificates filed with relator's petition form no part of their regular pay or *per diem*, but that they were illegally and without authority issued to the said parties as extra pay for their services. The respondent further alleges that the certificates were issued, signed and delivered in violation of the statute of this State, and were wholly unauthorized by the 27th General Assembly, as the journals and proceedings thereof plainly show. It is agreed by the parties in this proceeding that the certificates were issued as stated in the petition, and that the persons named were clerks and officers of the House of Representatives, and that they have each received the pay due them of five dollars per day, as fixed by law, and that the certificates were issued for night work.

The certificates were issued in accordance with a resolution which purported to have been passed at the regular session of the 27th General Assembly, on the eve of its adjournment. On the last day of the session a resolution was offered giving the clerks two dollars and fifty cents per night for doing night work. This resolution the journal says was adopted (House Journal 1873, pp. 1623–4). At the meeting of the adjourned session of the same body, there was a refusal to approve the journal showing that the resolution was adopted, but a correction was made by the decisive vote of 71 ayes to 8 noes, showing that the House adjourned pending the calling of the roll, and that no final action was reached. (House Journal 1874, pp. 5, 6.)

How or by what means the journal was written up so as to falsify the facts, we are unable to tell, nor is it necessary to inquire.

The question to be determined is, whether conceding that the journal authorized the issuance of the certificates, they constitute legal and binding obligations against the State.

By the statute it is provided that the Secretary of the Senate and chief clerk of the House, shall each receive seven dollars per day including six days after the adjournment of the General Assembly; and every other clerk employed by either house shall receive five dollars per day. (Wagn. Stat., p. 903, § 4.) By the act of 1869, which is the sixth section of the same law, (Id., p. 904), it is declared that "the compensation of all officers, clerks and employees of either house, not otherwise fixed by law, shall be fixed as soon as practicable after their election or appointment, and the pay of officers, clerks or employees, shall not be increased or diminished during their respective terms of office, or during the time [for] which they may be employed or appointed, either by appropriations out of the contingent funds of either house, or otherwise, in any manner whatever."

When these clerks were appointed their salary was already fixed, and the law expressly forbade that it should be increased in any manner whatever during the period of their employment. This law was binding on the House to the same extent as on a private individual. It was a general law and could not be repealed or disregarded by either house. It could only be modified, changed or done away with by the law-making power, viz: the concurrent action of the two houses and the approval of the executive. The reasons which prompted the enactment of the law are familar to all who are acquainted with the legislation of the state. The habit has been, at the end of each session of the legislature, to vote the people's money as extra compensation to clerks over and above their regular pay. This practice was designed by the law to be wholly prohibited. Nor can it make any difference that the resolution purports to be in payment of work done at nights. The law knows no fractions of days in this matter. In the history of legislation, a large proportion of the business is carried on at night. The committees per-

form a large part of their duties at that time, and till that period, some of the clerks have comparatively little to do. Where the members of the legislature are engaged at night upon the committees, or in holding night sessions, I apprehend no one would, for a moment, suppose that they were entitled to anything more than their regular *per diem*, and the clerks do not stand in a different situation. They are all employed by the day, and all receive the same remuneration which is fixed by law. In the business of legislation it frequently happens that there is a daily session of but an hour or two. Sometimes it extends far into the night; but whether long or short, it constitutes the day and the pay is always the same.

I am satisfied that the resolution was a palpable evasion of the law—an attempt to do indirectly what the law prohibited from being done directly. I therefore think that the Auditor did right in refusing to draw his warrants for the payment of the certificates, and that the writ should be refused. The other judges concur.